**UNITED STATES DISTRICT COURT
NORTHERN DIVISION OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| AHMED AL-MENHALI, et al. | ) | CASE NO. 1:17 CV 1089 |
| | ) | |
| Plaintiffs | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| vs. | ) | |
| | ) | TRIAL BRIEF ON BEHALF OF |
| MARRIOTT INTERNATIONAL, INC., | ) | DEFENDANTS ALEXIS SILVA AND |
| et al. | ) | LAURA ACTON-BELL |
| | ) | |
| Defendants | ) | |

Now come Defendants Alexis Silva and Laura Acton-Bell, by and through the undersigned counsel, and hereby submit their Trial Brief.

I. <u>STATEMENT OF FACTS</u>

This case arises from an incident shortly before the Republican National Convention where the plaintiff was briefly detained and questioned by the police after a young hotel employee texted her family that she felt she was in danger from possible terrorist activity. As a result of the texts, Avon police arrived at the scene, confronted Plaintiff, and briefly handcuffed and detained him. While the hotel employee was in fact mistaken about the plaintiff's actions and activities, there is no evidence on the record to support any of the claims for intentional or malicious conduct that are set forth in the Complaint. Further, only one of the two hotel employees even sent any texts.

II.  LAW AND ARGUMENT

  A. Plaintiff's Discrimination Claim Fails Due To Lack of Evidence of Disparate Treatment.

Plaintiff has asserted a claim for unlawful discrimination in violation of Ohio Revised Code § 4112, relating to the actions of Acton-Bell and Silva. R.C.§ 4112.02 provides that it shall be an unlawful discriminatory practice:

> (G) For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

The basis of Plaintiff's complaint is that Defendants' conduct was discriminatory by denying him the full and equal enjoyment of access to or ability to procure services and/or housing through the hotel. (Complaint ¶97) However, Plaintiff's request to stay at the hotel was based on long-term stay rates, which the hotel simply did not offer. Plaintiff also wanted a room with a kitchen and a large sitting area where he could receive guests, which were not available at this hotel. (Plaintiff depo., p. 152)

Plaintiff's claims that he was turned away due to race or religion are simply unsupported by any facts in the record. Furthermore, even if his use of the hotel had been limited in some way, there would not necessarily be unlawful discrimination. For instance, it has been held that the mere fact that a practicing Muslim is denied the ability to use a public facility for specific religious needs does not necessarily translate into discrimination. *Fall v. LA Fitness*, 161 F. Supp. 3d 601 (S.D. Ohio 2016)

In *Fall*, a fitness club member who was a practicing Muslim brought an action against his fitness club, alleging public accommodation discrimination on the basis of religion in violation of Title II of the Civil Rights Act and state law, as he was asked not to pray in a particular corner

of the men's locker room. The plaintiff testified that after an encounter with fitness club employees who made the request, he "felt horrible. I felt bad like I was doing something wrong." With respect to the state law discrimination claim, the Court noted:

> When determining whether there has been unlawful discrimination under R.C. 4112.02(G), the test is simply whether the proprietor, keeper, manager or employee of a place of public accommodation has denied to any person the full enjoyment of such place for reasons ***not applicable alike to all persons, irrespective of race, color, religion, national origin or ancestry***.

*Id. at 609, citing Ohio Civil Rights Comm'n v. Lysyj*, 38 Ohio St.2d 217, 221. The Courts found that there was no evidence that the plaintiff was denied full access to the facilities because of the narrow request to limit the locations of his prayer, or that other guests were allowed to pray in that location, and thus granted the club's motion for summary judgment.

Likewise, where there is no evidence that a customer's full enjoyment was limited or prevented because of the customer's sex, there is no discrimination claim. Thus, where a manger of a restaurant was rude, lewd, and obnoxious to both male and female customers, the plaintiff's discrimination claim failed as a matter of law, despite the overtly sexualized nature of offensive comments made to a particular female customer. *Meyers v. Hot Bagels Factory, Inc*. (1999), 131 Ohio App.3d 82.

In the case at bar, Plaintiff was not turned away or denied access to the hotel for any reason other than the fact that the hotel could not accommodate the very specific, but unavailable, terms under which he wanted to stay there. Since Plaintiff has no evidence that other guests of another race or religion were admitted to the hotel with extended stay rates, or with kitchenettes and large meeting rooms, his discrimination claim fails and summary judgment should be awarded.

B.  Plaintiff's Claim for Negligence Fails as a Matter of Law.

It is important to note that Ohio does not recognize a cause of action for negligent misidentification when reporting suspected criminal activity. *Foley v. University of Dayton*, 150 Ohio St.3d 252, 2016-Ohio-7591.  Thus, there is no liability for mistakenly reporting that Plaintiff was pledging to ISIS.

III.    EVIDENTIARY ISSUES

   A.  Apportionment.

Defendants have filed a joint notice of their intent to seek apportionment of liability under R.C. §2307.23. Defendants incorporate the notice to seek apportionment and the brief in response to Plaintiffs' objection to apportionment which have already been filed on the record. In addition, Defendants state the following.

As set forth in the motions previously filed, "Where a reasonable juror could find an alleged tortfeasor negligent, the jury must be allowed to consider that tortfeasor's fault in accordance with R.C. §2307.23". *Jester v.Utilimap Corp.*, 2018-Ohio-4755.  This rule applies even if the alleged tortfeasor has immunity against paying a money award.

One of the arguments Plaintiffs assert is that it is improper to allow apportionment since they cannot *collect* any monetary judgment against the police officers. However, collectability is never a consideration to be taken by the jury in awarding tort damages, unless the award is specifically for punitive damages. Rather, the jury is not to consider the wealth or lack thereof of any specific defendant in determining the amount of damages that a plaintiff has proven by a preponderance of the evidence were directly and proximately caused by the defendant's act or omission. When assessing damages, the jury is never to consider whether the defendant has personal wealth, insurance coverage, corporate wealth, or whether there are collateral sources of

recovery such as Medicare, Medicaid or workers' compensation benefits. Rather, to the contrary, the jury's duty under the statute is to (1) assess who is responsible for damages; (2) assess the percentage of fault as to each individual or entity responsible for the damage; and (3) assess the amount of damages awardable to plaintiff.

In fact, the remaining Defendants may not be collectable due to lack of personal funds and/or lack of insurance coverage. Therefore, the fact that the Plaintiffs may not be able to collect from the police officers is absolutely irrelevant and should not be considered as part of the jury's determination of fault and damages pursuant to the statute.

Furthermore, Defendants assert that without addressing fault related to the police activity, the Plaintiff cannot show the fear of physical harm which is necessary to support a claim for negligent infliction of emotional distress. In the motion for summary judgment ruling, this Court held that the Plaintiff did not need to provide evidence of a severe and debilitating emotional injury because there was a question of fact as to whether the Plaintiff was placed in actual physical peril. In the present case, the only "actual physical peril" suffered by the Plaintiff was due to the fact that the investigating officers arrived at the scene and held Plaintiff at gunpoint. The remaining factors of the Plaintiff's detention do not support a cause of action for negligent infliction of emotional distress. See *Snyder v. United States*, 590 Fed.App.X 505 (6th Cir. 2014).

In *Snyder*, a woman was arrested after local police and the FBI suspected her of participating in drug trafficking activity. The plaintiff was surrounded by three local police cruisers and arrested. She was "processed", which included a full body strip search, a DNA swab, fingerprinting and having her mug shot taken. Then the plaintiff spent the night in jail and was released on $1,000 bond after being arraigned the following morning. The ordeal lasted approximately 22 hours. The Court issued judgment in favor of the defendants, stating

specifically: "Being fingerprinted, handcuffed, strip searched and forced to take a DNA swab are typical, if not standard, booking procedures. Thus, Plaintiff failed to state a claim for negligent infliction of emotional distress because she was not placed in actual physical peril."

In the present case, Defendants Silva and Acton-Bell did not place Plaintiff in danger of any actual physical peril. Rather, the only physical peril came in the form of the police officers drawing their weapons against him. Even if Silva and Acton-Bell caused the police to investigate and detain and arrest the Plaintiff, those issues would not be enough to support a claim for emotional distress under *Snyder*. Therefore, without assessing any fault in relation to the police actions resulting in actual physical peril, Plaintiff cannot support a claim of negligent emotional distress against Defendants Silva and/or Acton-Bell.

B.  Expert Testimony.

Defendants have filed a joint motion in limine to exclude expert opinions from the Plaintiff's treating physicians. Defendants incorporate the motion as if fully rewritten herein.

In addition, testimony was elicited during the trial depositions of Dr. Pilar Lachwani and Dr. Samir Alamir which far exceed permissible testimony by a treating physician as opposed to an expert witness. Such statements include but are not limited to pre-disposition to forming post-traumatic stress disorder and aggravation of existing injuries. Defendants timely objected during the trial depositions of the treating physicians, thereby preserving the objections.

C.  Judicial Estoppel

Plaintiffs have argued that the "law of the case" precludes any discussion of the fact that the officers are immune from civil liability. However, this Court found that the scope of the officers' actions exceeded a permissible Terry stop. Therefore, the Plaintiffs were successful in establishing that the police officers' actions were not permitted under the law.

The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *Lewis v. Weyerhaeuser*, 141 Fed.App.X 420 (6th Cir. July 6, 2005), citing *New Hampshire v. Main*, 532 U.S. 742, 750 (2001). The Court in *Lewis* noted that "judicial estoppel preserves the integrity of the Courts by preventing a party from abusing the judicial process through cynical gamesmanship". *Id*. at 424, citing *Browning v. Levy*, 283 F.3d 761, 766 (6th Cir. 2002). In *Lewis,* the Court noted: "This Court has previously described judicial estoppel as a rule against playing fast and loose with the Court, blowing hot and cold as the occasion demands, or having one's cake and eating it too". *Id.* citing *Reynolds v. Commissioners*, 862 F.2d 469, 472 (6th Cir., 1988).

The doctrine can apply even if the Court has only accepted the contrary prior argument as a preliminary matter and not as a final ruling. See *e.g., Felix v. Dow Chemical Co.*, 2008-WL-207857 (S.D. Ohio, Jan. 23, 2008). Defendants assert that it is improper for the Plaintiffs to ignore the fact that claims were brought against the police and that the Court accepted the position the officers' conduct exceed the scope of a permissible Terry stop, as the claims proceed against the remaining Defendants.

D. Pending Motions.

There are several pending motions in limine that deal with various evidentiary issues, including Plaintiffs' motion in limine on war and terror [DOC #81], Plaintiffs' motion in limine on whether the police officers were Defendants and were awarded summary judgment [DOC #81], and Plaintiffs' No Bill motion in limine against Alexis Silva [DOC #81].

Defendants have motions in limine to preclude expert witness testimony [DOC #77], to seek apportionment [DOC #95], to exclude media coverage [DOC #79], and to bifurcate any evidence for punitive damages [DOC #78].

Respectfully submitted,

*/s/ Craig G. Pelini*
Craig G. Pelini (#0019221)
Kristen E. Campbell Traub (#0066452)
Pelini, Campbell & Williams, LLC
8040 Cleveland Ave., NW, Suite 400
North Canton, OH 44720
Telephone: (330) 305-6400
Facsimile: (330) 305-0042
E-mail: cgp@pelini-law.com
Counsel for Defendants
Alexis Silva and Laura Acton-Bell

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Craig G. Pelini*
Craig G. Pelini (#0019221)

S:\4137\2720\trial brief.docx